```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PETER LIPINSKI

                Plaintiff,         1:17-cv-00175-MAT
       -v-                         **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.
_____
```

**INTRODUCTION**

Peter Lipinski ("Plaintiff"), represented by counsel, brings this action under Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is granted to the extent that the matter is remanded for further administrative proceedings, and Defendant's motion is denied.

**PROCEDURAL BACKGROUND**

On June 9, 2011, Plaintiff protectively filed an application for SSI, alleging disability as of August 7, 2007, due to herniated discs in the cervical spine, status post-discogram, and status post-right shoulder surgery. Administrative Transcript ("T.") 220-24. The claim was initially denied on July 19, 2011. T. 98-105. At Plaintiff's request, a hearing was conducted on November 28, 2012, in Buffalo, New York, by administrative law judge ("ALJ") Robert Harvey. Plaintiff appeared with his attorney and testified. T. 54-75. On December 13, 2012, the ALJ issued an unfavorable decision. T. 77-91. Plaintiff appealed the decision to the Appeals Council, which vacated the decision and remanded the case to the ALJ for further administrative development. T. 92-95. In particular, the ALJ was directed to reweigh the opinion of Dr. Conrad Williams, one of Plaintiff's treating sources, and to obtain vocational testimony about the extent to which Plaintiff's limitations eroded the occupational base for light work. T. 93.

On remand, the ALJ held a second hearing in Buffalo, New York, on February 19, 2015. Plaintiff appeared with his attorney and testified. A vocational expert ("VE") also testified. T. 26-53. Plaintiff amended his alleged onset date from August 7, 2007, to September 29, 2014. T. 29. On April 22, 2015, the ALJ issued a second unfavorable decision. T. 9-25. Plaintiff timely appealed

the decision to the Appeals Council, and on September 30, 2015, he submitted additional evidence in support of his claim. T. 597-615. The Appeals Council denied Plaintiff's request for review on September 7, 2016, making the ALJ's decision the final determination of the Commissioner. T. 1-5. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 416.920(a).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 29, 2014, the amended alleged onset date. T. 14.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: status post right shoulder arthroscopy, discogenic cervical spine, cervical radiculopathy, and headaches. *Id*.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. The ALJ specifically considered Listings 1.02 (Major Dysfunction of a Joint(s)) and 1.04 (Disorders of the Spine). T. 14-15.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional limitations: cannot work in an area with unprotected heights; cannot work around heavy, moving, or dangerous machinery; has occasional limitation in bending, stooping and squatting; cannot crawl; cannot climb ropes, ladders or scaffolds; has occasional limitations in the ability to reach in all directions with his right upper extremity; has occasional limitations in pushing and pulling with the right upper extremity; and cannot work in areas where he would be exposed to cold. T. 15.

At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work as a truck driver. T. 20. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative jobs of counter clerk and shipping/receiving weigher. T. 21. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. *Id*.

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual

findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted because the ALJ's determination is not based on substantial evidence because (1) the ALJ improperly rejected the opinion of consultative examiner Dr. Abrar Siddiqui based on his own lay interpretation

of the medical evidence, and (2) the ALJ's RFC was not supported by substantial evidence in light of the additional evidence submitted by Plaintiff to the Appeals Council.

I. **The Medical Opinion of Consultative Physician Dr. Abrar Siddiqui**

On November 17, 2014, Plaintiff was examined by Dr. Siddiqui at the Commissioner's request. T. 582-85. Plaintiff complained of neck pain and back pain since a 2008 work accident as well as back pain for the past three weeks following a motor vehicle accident ("MVA"). His back pain was aggravated by bending and lifting. He rated his neck pain at 7 to 9 on a scale of 1 to 10; ice, a heating pad, and pain medication reduced it to a 4 out of 10.

Upon examination, Plaintiff appeared to be in no acute distress. He exhibited a normal gait, could walk on his heels and toes with some difficulty, was able to squat to twenty degrees, and used no assistive devices. T. 583.

Plaintiff's cervical spine flexion and extension were restricted to 30 degrees; lateral flexion was restricted to 30 degrees due to neck pain. Plaintiff declined to perform neck rotary movements bilaterally. He had no cervical or paracervical pain or spasms and no trigger points. *Id*.

Plaintiff's right shoulder forward elevation and adbuction were restricted to 100 degrees, adduction was restricted to 15

degrees, internal rotation was restricted to 20 degrees, and external rotation was restricted to 60 degrees due to right shoulder pain. T. 583-84. Plaintiff exhibited full range of motion in his left shoulder as well as in his elbows, forearms, wrists, and fingers bilaterally. There was no joint inflammation, effusion, or instability. T. 584.

Plaintiff's thoracic and lumbar spine flexion and extension were restricted to 45 degrees. Lateral flexion was restricted to 15 degrees bilaterally, and rotary movements were restricted to 15 degrees bilaterally due to low back pain. *Id*. Plaintiff exhibited no spinal or paraspinal tenderness. There was no sacroiliac joint or sciatic notch tenderness, spasm, scoliosis, or kyphosis. Straight leg raising tests were negative bilaterally. *Id*.

Plaintiff exhibited full range of motion in his hips and knees bilaterally, though he complained of low back pain. Plaintiff's ankle dorsiflexion and plantar flexion were full. His strength was four out of fi13ve in proximal and distal muscles bilaterally. He exhibited no muscle atrophy, sensory abnormality, joint effusion, inflammation, or instability. T. 584.

Dr. Siddiqui diagnosed Plaintiff with neck pain and low back pain. T. 584. He opined that, on the basis of his examination, Plaintiff had severe limitations in heavy lifting, squatting,

kneeling, crouching, and frequent bending; moderate limitations in walking long distances and standing long periods of time; and mild limitation in sitting long periods of time. Plaintiff had marked limitation in frequent bending, moderate limitation in performing overhead activities using his right arm, and no limitation using his hand for fine and gross motor activities. T. 585. When asked if the limitations to which he opined had lasted or would last for 12 consecutive months, Dr. Siddiqui did not check "yes" or "no". T. 592.

A cervical spine x-ray examination completed as part of Dr. Siddiqui's examination showed lower cervical straightening, but otherwise the height of the vertebral bodies and intervertebral disc spaces were relatively well-maintained and the pedicles were intact. T. 586.

Also on November 17, 2014, Dr. Siddiqui completed an RFC assessment form provided by the Social Security Administration, T. 587-92, indicating that Plaintiff could occasionally lift or carry up to 10 pounds and never lift or carry more than 10 pounds; could sit for 3 hours at a time, stand for 1 hour at a time, and walk for 15 minutes at a time. Dr. Siddiqui indicated that Plaintiff could only sit for 3 hours total, stand for 1 hour total, and walk for 15 minutes total during an 8-hour day. T. 588. Plaintiff could frequently reach in all directions

bilaterally; frequently handle, finger, feel, push and pull bilaterally; and frequently operate foot controls with either foot. T. 589. Plaintiff could occasionally climb stairs and ramps, ladders or scaffolds, balance, stoop, kneel, crouch, and crawl. T. 590. Dr. Siddiqui opined that Plaintiff was capable of performing activities like shopping, traveling without a companion, ambulating without an assistive device, walking a block at a reasonable pace, using standard public transportation, and climbing a few steps at a reasonable pace. T. 592.

**II. The ALJ's RFC Finding Is Not Supported by Substantial Evidence**

Plaintiff argues that the ALJ improperly rejected Dr. Siddiqui's opinion based on his own lay interpretation of medical evidence and thus failed to support the RFC finding with substantial evidence.

When assessing a disability claim, an ALJ is required to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (unpublished opn.). The ALJ's RFC finding need "not perfectly correspond with any of the opinions of medical sources." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (stating that the trier of fact "has the duty" to resolve the "not uncommon situation of conflicting medical

evidence")). However, "an ALJ may not substitute his own judgment for competent medical opinion." *Lewis v. Comm'r of Soc. Sec.*, No. 6:00 CV 1225 GLS, 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)).

Here, the ALJ gave "little" weight to Dr. Siddiqui's medical source statement and detailed RFC questionnaire because (1) the record contained no evidence of nerve root or thecal sac compression; (2) no evidence to support lower extremity limitations or the limitations in the use of foot controls; and (3) the degree of limitation assigned by Dr. Siddiqui was inconsistent with the cervical spine x-rays showing only some cervical straightening. *Id*.

"Although it is true that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion,' he remains 'free to choose between properly submitted medical opinions' and to rely on those opinions in reaching his disability determination." *Kessler v. Colvin*, 48 F. Supp.3d 578, 597 (S.D.N.Y. 2014) (quoting *McBrayer v. Sec. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); other citations omitted). Here, however, no medical expert had issued an opinion indicating that "nerve root or thecal sac compression" was required to reach the level of functional limitation reported by

Dr. Siddiqui. Thus, the ALJ improperly elevated his own lay opinion over the expert opinion of the consultative physician. *See, e.g., Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014) (finding RFC assessment not supported by substantial evidence where the ALJ "primarily reached this conclusion through her own interpretation of various MRIs and x-ray reports contained in the treatment records")(citing *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (unpublished opn.); other citations omitted).

With regard to the "lack of evidence" of "lower extremity limitations," it is appropriate for an ALJ to consider how consistent an opinion is with the rest of the record when determining what weight to give to the opinion. *See* 20 C.F.R. § 416.927(c)(4). While "[a]n ALJ need not recite every piece of evidence that contributed to [his] decision," *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013), the decision must be sufficient to allow the reviewing court "to glean the rationale of an ALJ's decision[,]" *id.* Here, however, it is wholly unclear what the ALJ meant by "lower extremity limitations." The only specific limitation involving the lower extremities mentioned by the ALJ was the ability to use foot controls. The Court is thus unable to discern what aspects of

Dr. Siddiqui's RFC assessment and medical source statement were being rejected and why.

Finally, with regard to the ALJ's reliance on the cervical spine x-rays as evidence negating the degree of limitations assigned by Dr. Siddiqui, the Court finds that ALJ again substituted his lay opinion for that of a medical expert who examined Plaintiff. In effect, the ALJ "relied on a medico-legal standard of his own creation to determine when symptoms from [musculoskeletal] diagnoses are severe enough to be disabling." *Harris v. Colvin*, 149 F. Supp.3d 435, 450 (W.D.N.Y. 2016) (citing *Morseman v. Astrue*, 571 F. Supp.2d 390, 396 (W.D.N.Y. 2008) (finding that ALJ "relie[d], in part, on his own lay opinion regarding manifestations of pain"; credibility assessment "constitute[d] a medical standard authored by the ALJ and not supported by any medical evidence in the record")). As Plaintiff points out, he sustained "significant injuries to the cervical spine" as a result of his slip-and-fall at work in 2008. T. 286. Cervical discography revealed that Plaintiff had discogenic pain emanating from all vertebrae in the C3 to C7 range, described by Dr. Huckell as "extensive tearing." T. 371, 491-95. When this annular tearing was discovered by means of cervical discography, Plaintiff's x-rays were relatively unremarkable. Thus, in Plaintiff's case, x-rays are not necessarily probative as to the

severity of his pain or his limitations caused by his impairments.

On the present record, the Court cannot find that the ALJ's failure to apply the correct legal principles in weighing Dr. Siddiqui's medical source statement and RFC assessment was harmless. Once Plaintiff amended his onset date, Dr. Siddiqui's reports were the only medical opinion evidence in the record that covered the relevant period. The ALJ's rejection of Dr. Siddiqui's opinions left the RFC assessment unsupported by any medical opinion evidence. In the present case, the Court finds that this left a gap in the record. *See Palascak v. Colvin*, No. 1:11-CV-0592(MAT), 2014 WL 1920510, at *9 (W.D.N.Y. May 14, 2014) ("Given Plaintiff's multiple physical and mental impairments, this is not a case where the medical evidence shows 'relatively little physical impairment' such that the ALJ 'can render a common sense judgment about functional capacity.'") (quoting *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)).

**III.  The Additional Evidence Submitted to the Appeals Council Undermined the RFC Assessment**

On September 30, 2015, Plaintiff submitted additional medical evidence to the Appeals Council that detailed his treatment following the October 27, 2014 MVA. T. 597-619. The evidence submitted included emergency room records immediately

following the car accident (T. 605-610), chiropractic treatment records (T. 597-604), and pain management records (T. 611-19). These records show that Plaintiff sought treatment for neck pain, right shoulder pain, headaches, and low back pain. The Appeals Council accepted and reviewed the additional evidence and determined that it was not contrary to the weight of all the evidence in the record. Accordingly, it denied Plaintiff's request to further review the ALJ's decision. T. 1-5.

Where, as here, the Appeals Council adds new evidence to the record but denies review, the reviewing court does not assess the Appeals Council's denial but decides whether the record as a whole, including the new evidence, contains substantial evidence supporting the ALJ's determination. *Perez v. Charter*, 77 F.3d 41, 45-46 (2d Cir. 1996). If the additional evidence is consistent with the ALJ's decision, then the decision should be affirmed. *See id.* at 47. The Court finds that the additional evidence submitted to the Appeals Council after the hearing undermines the substantiality of the evidence supporting the RFC assessment and further supports the Court's conclusion that the error in weighing Dr. Siddiqui's opinion was not harmless.

In particular, pain management specialist Dr. Mikhail Strut examined Plaintiff on May 5, 2015, and noted that he appeared to be in distress due to pain. T. 613. On examination, Plaintiff had

-14-

a positive Spurling's test; tenderness and sensitivity in the occipital region; and pain on palpation over a number of areas including the cervices capitus, upper trapezius, lumbar paraspinal, bilateral sacroiliac joints, and tensor fascia lata. T. 613. His functional range of motion was decreased to approximately 50 to 75 percent in all planes. *Id.* Dr. Strut diagnosed Plaintiff with acute pain due to trauma; sprains and strains of the cervical, thoracic, and lumbar spines; cervicalgia; lumbago; and neuritis, among other things. T. 614. The date of loss was indicated as October 27, 2014, the date of the MVA. Dr. Strut opined that Plaintiff was 100 percent temporarily disabled. T. 614. While Dr. Strut's opinion as to Plaintiff's disability had neither persuasive nor binding effect on the Commissioner, Dr. Strut's clinical findings and observations about Plaintiff's functional limitations are relevant, and the ALJ should have the opportunity to consider them in the first instance.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 13) is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this decision. In particular, the ALJ is directed to (1) reweigh

the medical source statement and RFC assessment of consultative physician Dr. Siddiqui; (2) recontact Dr. Siddiqui for clarification regarding the question he left blank on the RFC assessment form (i.e., whether the limitations he assigned had existed or were expected to exist for 12 months); and (3) consider the evidence submitted by Plaintiff to the Appeals Council in connection with the previous hearing. The Commissioner's motion for judgment on the pleadings (Docket No. 18) is denied.  The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

**s/ Michael A. Telesca**
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   March 29, 2019
         Rochester, New York